IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:10-69-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| ALTON EUGENE WALKER | ) | |
| _____ | ) | |

This matter is before the court on defendant's sealed *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 92). Seeking compassionate release, the defendant states in his motion that he has a serious physical or medical condition which could threaten his health safety if he were to contract COVID-19.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors do not weigh in favor of his release.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is denied.

PROCEDURAL HISTORY

In January 2010, the defendant was charged in an Indictment with the following:

Count 1: felon in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e);

Count 2: possession with intent to distribute 5 grams or more of cocaine

1

    base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 851; and

Count 3:  possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 922(g), 3924(a)(2), 924(c)(1)(A).

The government filed two Informations notifying the defendant that he was subject to increased penalties provided under § 924(e). Specifically, the first Information (ECF No. 21) notified the defendant that he was subject to an enhanced statutory penalty on the § 841(a)(1) drug charge due to his prior felony drug convictions for possession with intent to distribute crack cocaine (offense date 03/07/1995); possession with intent to distribute crack cocaine (offense date 05/21/1997), possession with intent to distribute crack cocaine (07/06/1997), possession with intent to distribute crack cocaine (offense date 07/20/2000), possession of crack cocaine 2nd offense (offense date 06/25/2002), trafficking crack cocaine 10–28 grams (offense date 04/05/2001), and possession with intent to distribute cocaine 1st offense (offense date 08/34/2005).

 The second Information (ECF No. 22) notified the defendant that he was subject to an enhanced statutory penalty under the Armed Career Criminal Act under § 924(e) for the felon in possession of firearms and ammunition charge in light of his prior convictions for the following "serious drug offenses": possession with intent to distribute crack cocaine (offense date 03/07/1995); possession with intent to distribute crack cocaine (offense date 05/21/1997); possession with intent to distribute crack cocaine (07/06/1997); possession with intent to distribute crack cocaine (offense date 07/20/2000); trafficking crack cocaine 10-28 grams (offense date 04/05/2001); and possession with intent to distribute cocaine 1st offense

(offense date 08/34/2005).

The defendant pleaded guilty to Counts 1 and 2 referenced above pursuant to a written plea agreement (ECF No. 41).

The Presentence Report (PSR) (ECF No. 58) prepared by the United States Probation Office determined the defendant's combined adjusted offense level at 30. With enhancements under United States Sentencing Guideline (USSG) § 4B1.1 (Career Offender), the defendant's offense level became 37. That level was reduced by 3 levels for acceptance of responsibility, for a new total offense level of 34. Because the defendant was determined to be a career offender, his criminal history category was VI. Because the defendant is also an armed career criminal, his criminal history category was VI. The offense level of 37 and criminal history category of VI produced a Guidelines range of 262 to 327 months.

On February 22, 2011, this court denied the defendant's motion for a variance and sentenced the defendant to a total of 262 months (the low end of the Guidelines) on each count, to run concurrently. He was also sentenced to 8 years of supervised release.

The defendant did not file an appeal of his conviction and sentence. He did, thereafter, file a motion pursuant to 28 U.S.C. § 2255 seeking to avail himself of the decision of the United States Supreme Court in *Dorsey v. United States*, 567 U.S. 260 (2012). The government agreed that the defendant was entitled to relief under *Dorsey* and in November 2012, this court granted the defendant's § 2255 motion. After a new PSR was prepared (ECF No. 85), the court resentenced the defendant to 188 months. This was based on a reduced total offense level of 31 and a criminal history category of VI which produced

3

a new Guidelines range of 188 to 235 months.

The defendant has received credit on his 188-month sentence for the time he has served from September 11, 2008 to September 18, 2009, and March 25, 2010 to present. His scheduled release date from the BOP is September 2, 2023. He is located at the Federal Correctional Institution Allenwood Low.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of

Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at

5

230); *see also, Kibble*, 992 F.3d at 331.[1]

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

In summary, when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the

---

[1] Although the government's response, which was filed prior to *McCoy*, advocates for application of the policy statement, the defendant correctly asserts that the policy statement is not applicable here.

court may reduce the term of imprisonment) (emphasis added).

### *Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have fully exhausted all of the administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days with no answer from the Warden after a request by the defendant, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

Here, the government concedes that the defendant has satisfied the procedural requirements of § 3582(c)(1)(A).[2] As it appears to this court that the defendant has now fully exhausted his administrative remedies, the court will proceed to review the matter on the merits.

### DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the

---

[2] The defendant's first motion for compassionate release was denied by this court without prejudice (ECF No. 89) because the defendant had not exhausted his administrative remedies.

possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Medical Condition*

The defendant now returns to this court seeking his immediate release and home confinement[3] on the ground that his medical condition and the general threat from COVID-19 justifies his release. The defendant's only medical condition listed in his motion for compassionate release (ECF No. 92) is that he is partially paralyzed on the left side of his face as the result of a sun stroke. The medical records describe the condition as a disorder of the facial nerve. As the government notes in its opposition memorandum, the defendant does not mention that this stroke occurred when he was an infant. In other words, the defendant is relying upon this unfortunate malady, coupled with the pandemic, as a

---

[3] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")

justification for compassionate release. Notably, this medical condition has not affected the defendant's ability to engage in the various crimes he has committed over the years.

The defendant does not point to anything in his medical records or medical literature that suggests that his partial face paralysis makes him particularly susceptible to COVID-19 virus. Indeed, the Center for Disease Control (CDC) does not provide any specific guidance for pre-existing partial facial paralysis in relation to susceptibility to COVID-19.

In addition, at the time of the defendant's original sentencing on February 22, 2011, the defendant's PSR noted the defendant's statement that he was "in good physical health" and "takes no prescription medications." He also denied having any significant illnesses or injuries in the past. (ECF No. 58 at ¶ 24).

After carefully considering the matters, this court has determined that the defendant has not demonstrated that his medical condition, coupled with the ongoing COVID-19 pandemic, constitutes an extraordinary and compelling reason for his early release.

## *Post-Sentencing Conduct*

The defendant has taken 44 educational courses and has obtained his GED while incarcerated. He has also worked in various positions including food service, sewing, industry warehouse, and recreation. He states that he has worked for UNICOR for almost 10 years and has his apprenticeship in office management.

## CONCLUSION

After carefully considering and conducting an individualized analysis of the facts and issues raised by the parties, as well as the defendant's post-sentencing conduct while

imprisoned at the BOP, the court finds no extraordinary and compelling reason exists to persuade the court to grant the defendant's motion for compassionate release. As a result, it is not necessary for the court to address the § 3553(a) factors.

Accordingly, the defendant's motion for compassionate release is respectfully denied (ECF No. 92).

IT IS SO ORDERED.

October 21, 2021                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                       United States District Judge